In the Matter of PEDRO RUIZ et al., Petitioners, v ABE LAVINE, as Commissioner of the New York State Department of Social Services, et al., Respondents.

Fourth Department, July 18, 1975

*Monroe County Legal Assistance Corporation (Peter D. Braun* of counsel), for petitioners.

*Louis J. Lefkowitz, Attorney-General (Paul O. Harrison* and *Ruth Kessler Toch* of counsel), for Abe Lavine, respondent.

*William J. Stevens, County Attorney (Sam DiLalla* of counsel), for James Reed, respondent.

GOLDMAN, J. Petitioners Pedro Ruiz and Flora Ruiz brought this article 78 proceeding to review a determination, made by respondent Abe Lavine in his official capacity as Commissioner of the New York State Department of Social Services, which affirmed the determination of respondent James Reed as Director of Monroe County Department of Social Services. The Monroe County agency, after a fair hearing, denied petitioners' application for medical assistance. Petitioners contend that the determination is not supported by substantial evidence and, that even if it is, the statute under which the determination was rendered is unconstitutional as to them.[1]

The evidentiary facts are not disputed. Petitioners Ruiz came to Rochester, in Monroe County, from Puerto Rico because Mrs. Flora Ruiz was suffering from an illness which

1. It appears that this proceeding was commenced after the four-month Statute of Limitations had expired (CPLR 217). However, since neither respondent has chosen to raise this objection by either a responsive pleading or a motion to dismiss the petition, the objection is waived (CPLR 3211, subd [e]).

could not be properly treated in Puerto Rico. Testimony at the hearing indicated that Mrs. Ruiz' physician in Puerto Rico diagnosed her condition as a "prima kidney disease" which would require hemodialysis within three months if she were to survive. Although such facilities existed in Puerto Rico, there was a six-month waiting period before they would be available. Since petitioners had a daughter in Rochester who was a social worker at Strong Memorial Hospital, their Puerto Rican physician recommended that petitioners move in with their daughter and try to obtain the necessary treatment in Rochester. From June 20 to June 28, 1973, Mrs. Ruiz was in a hospital in Puerto Rico. On June 28, she was discharged; she flew immediately to Rochester, spent the night with her daughter, and entered Strong Memorial Hospital the next day. The petitioners brought many of their personal belongings to Rochester with them, but both at the time of their original application for assistance and at the time of the fair hearing, they still owned a home in Puerto Rico.

Mrs. Ruiz remained at Strong Memorial from June 29 to August 10, 1973. On August 29, 1973, the Department of Social Services (D.S.S.) denied petitioners' Ruiz application for medical assistance on the ground that they were residents of Puerto Rico and had come to New York State for the purpose of receiving medical assistance or in contemplation of receiving care and treatment under New York's medical assistance program. The D.S.S. contended that since the petitioners had only been here one month at the time of their application for assistance, they "certainly couldn't have been deemed residents".

A fair hearing was held on September 25, 1973. Although Mrs. Ruiz had been discharged from Strong Memorial on August 10, 1973, she was still living in Rochester at this time. The D.S.S. representative admitted that no investigation on the application had been made; rather, the D.S.S. apparently deemed the move to be temporary solely because the application was made within one month of their arrival. Mr. Ruiz testified that he and his wife came to Monroe County with the intention of remaining because of the continued treatment required by Mrs. Ruiz and that they intended to make their home in Rochester. Although discharged from the hospital, Mrs. Ruiz was continuing to receive medical treatment at the time of the fair hearing. She was being treated for cancer and the continued treatment was to be for a long and indefinite

time. On the other hand, Mr. Ruiz responded to the question: "If his wife wasn't sick would they intend to go back to Puerto Rico?" by saying: "If she wasn't ill, they would return".[2]

On November 2, 1973 respondent Lavine affirmed the original denial of assistance. For reasons which will become apparent, we conclude that the focus of the fair hearing was misplaced and remand this case to the D.S.S. for a new hearing as to petitioners' intent to make Rochester their home.

The substantive statutory provision pursuant to which the determination was made to deny petitioners' application for medical assistance is section 366 (subd 1, par [b]) of the Social Services Law: "Medical assistance shall be given under this title to a person who requires such assistance and who * * * *is a resident* of the state, *or, while temporarily in the state,* requires immediate medical care * * * provided that such person did not enter the state for the purpose of obtaining such medical care". (Emphasis added.)

The statute, then, creates two classes of people: residents and people temporarily in the State. By statute, New York defines State residence to require that a person reside in the State continuously for one year (Social Services Law, § 117). However, this durational residency requirement has been held to be an impermissible infringement upon the constitutional right to travel and migrate between the several States and territories *(Matter of Corr v Westchester County Dept. of Social Services,* 33 NY2d 111; *Matter of Dillingham v Lavine,* 48 AD2d 657; see, also, *Memorial Hosp. v Maricopa County,* 415 US 250 ; *Shapiro v Thompson,* 394 US 618).

Rather, residence, for purposes of the Social Services Law, must be determined by reference to the same criteria as are used to determine domicile *(Matter of Corr v Westchester County Dept. of Social Services, supra,* pp 115–117). The issue of domicile is a question of fact *(Usher v Usher,* 41 AD2d 368, 370), and an individual's intention is the most important factor in determining his domicile *(Matter of Trowbridge,* 266 NY 283, 289). "Motives are immaterial * * *. A change of domicile may be made * * * for * * * health * * * or for any reason whatever, provided there is an absolute and fixed intention to abandon one and acquire another and the acts of

---

2. Mr. Ruiz spoke no English at the time of the fair hearing, and his testimony was translated by his daughter.

the person affected confirm the intention * * *. Intention may be proved by acts and by declarations connected with acts". *(Matter of Newcomb,* 192 NY 238, 250–252; see, also, *Matter of Chrisman,* 43 AD2d 771; *Rosenstiel v Rosenstiel,* 15 AD2d 880, 881, mot den 11 NY2d 882.)

Residence for purposes of the Social Services Law, then, depends upon the applicant's intention to make New York his place of residence; the motivation behind the intention is immaterial, and health reasons are specifically recognized as valid *(Matter of Newcomb, supra,* p 251). The proviso contained in section 366 (subd 1, par [b]), prohibiting medical assistance to persons who enter the State to obtain medical care should properly be read to apply only to the second class of people distinguished in the statute: persons temporarily in the State. In order to qualify for medical assistance under the statute it is enough that petitioners Ruiz establish that they are bona fide residents—that they intend to make New York their place of residence—regardless of their reasons.

It was this intent that should have been the paramount focus of inquiry at the fair hearing. However, the D.S.S. ignored the petitioners' expression of that intent, ignored that the petitioners were living under a seemingly permanent arrangement with their daughter and son-in-law, ignored that Mrs. Ruiz was continuing to receive medical attention here and that she saw no definite end to her treatment, ignored the testimony that established that the petitioners had moved all of their personal belongings that they could to Rochester, and ignored the extremely compressed time span in which these events transpired.

Rather, the D.S.S. centered its determination on petitioners' continued ownership of property in Puerto Rico and Mr. Ruiz' admission that they were motivated to move to New York because of Mrs. Ruiz' poor health. But, in view of the short time sequence between petitioners' arrival in Rochester and the fair hearing, it is not surprising that petitioners still owned a house in Puerto Rico. Significantly, no evidence was adduced at the fair hearing on the issue of what was to become of the Puerto Rico house. Moreover, Mr. Ruiz' testimony at the fair hearing that if Mrs. Ruiz were not ill, they would return to Puerto Rico only proves that all things being equal Mr. Ruiz would prefer to live in Puerto Rico. It does not establish where the Ruizes intended to live under the realities

with which they then found themselves confronted. The situation is not unlike a New Yorker with asthma who must move, for health reasons, to the dry climate of Arizona. He may fervently wish to become cured so that he may move back to New York, but that does not affect his intention to live permanently in Arizona (see *Nielsen v Social Serv. Bd. of N. D.,* 216 NW2d 708, 715 [N.D.]).

Clearly, then, the record, read as a whole, does not provide the substantial evidence of a competent probative force necessary to sustain the D.S.S.'s determination that petitioners Ruiz are not domiciliaries of New York *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 230). We conclude that the respondents improperly centered their inquiry at the fair hearing on the petitioners' Ruizes motivation for coming to Monroe County rather than their intention with regard to making Monroe County their home. Moreover, what little evidence adduced at the fair hearing relevant to this intention was so conflicting that this case should be remanded for a new hearing in conformity with the principles expressed in this opinion.

Inasmuch as this matter is being remanded for a new hearing, it is unnecessary to reach the question of the constitutionality of section 366 (subd 1, par [b]) of the Social Services Law.

MARSH, P. J., CARDAMONE, SIMONS and WITMER, JJ., concur.

Determination unanimously annulled without costs and matter remitted to respondents for a new hearing in accordance with opinion by GOLDMAN, J.