In the Matter of ROSE CASEY, Petitioner, v ABE LAVINE, as Commissioner of the Department of Social Services of the State of New York, et al., Respondents.

Third Department, November 10, 1976

Hinman, Howard & Kattell (C. Addison Keeler, Jr., of counsel), for petitioner.

Louis J. Lefkowitz, Attorney-General (Clifford A. Royael, Ruth Kessler Toch and Jean M. Coon of counsel), for Abe Lavine, respondent.

Thomas B. Oakes for Broome County Department of Social Services, respondent.

LARKIN, J. By decision dated May 22, 1974 the respondent commissioner upheld an initial determination by the Broome County Department of Social Services denying medical assistance to the petitioner on the grounds that "the petitioner is not a resident of the State of New York and that the petitioner entered this State for the purpose of obtaining medical assistance and care". The decision also implied that petitioner may not have been a resident of New York State under the Social Services Law because she had not lived here for one year, excluding the time spent as "a patient in a hospital or private institution". We are constrained on this record and under the authority of Matter of Corr v Westchester County Dept. of Social Servs. (33 NY2d 111), to conclude that this determination is not supported by substantial evidence and must be annulled.

Petitioner was born in Halstead, Pennsylvania, on June 6, 1903. Halstead is approximately five miles from the New York State border and fewer than 20 miles by road from Binghamton, New York. In 1921 petitioner commenced employment with the Binghamton Press in Binghamton. In 1926 she

married and moved to Binghamton, where she lived until 1933 or 1934 when she and her husband purchased her mother's house in Halstead. Petitioner continued to work in Binghamton until 1951, when she suffered a stroke, and her husband continued to work in Binghamton until his death in 1961. Despite strokes in 1951 and 1966 and a cerebral hemorrhage in 1955, petitioner lived alone for 12 years after her husband died.

Petitioner testified that her husband had, prior to his death, expressed a desire to build a house in Conklin, New York, close to Binghamton. She testified that when she moved from Halstead to Montrose, Pennsylvania, in 1970, she wanted to move to Binghamton but could not find a suitable apartment. She applied for admission to the Good Shepherd-Fairview Home in Binghamton in January, 1970. She testified that, through various friends and acquaintances, she had known about Fairview for many years. In August, 1972 she entered Fairview as a resident. She desired to move to Binghamton after having lived in Pennsylvania for most of her life because "I was near different churches and entertainment and people that I had known for years".

The Good Shepherd-Fairview Home, Inc., is a church affiliated, non-profit corporation. The organization operates a "domiciliary care facility" under the jurisdiction of the New York State Department of Social Services, and a "health related facility" and a "skilled nursing facility" under the supervision of the New York State Department of Health. Petitioner, as a resident of the health related facility, apparently has considerable freedom in her personal life, participates in many activities within Fairview and, in addition, attends a local church with friends from the community and sings on a regular basis in outside choirs. She voted in New York State in the 1972 presidential election. Although petitioner had problems with her health in the past, and one of the reasons she entered Fairview was to have supportive care available, she testified on cross-examination that, other than a gall bladder operation, she had rarely been ill since entering Fairview, had been examined only twice by a physician while in Fairview and was not under any medication.

Upon being informed by petitioner in September, 1973 that her funds were getting low, Fairview endeavored to aid her in obtaining public assistance. An application for assistance was refused by the Susquehanna County Board of Assistance in

Montrose because she was not a resident of Pennsylvania. Similar reasons were given for the denial of medical assistance to her which is the subject of this proceeding. Petitioner thus has been the subject of administrative determinations declaring her to be a resident of neither Pennsylvania nor New York for the purposes of obtaining certain public assistance benefits.

Section 366 of the Social Services Law, in issue herein, provides: "1. Medical assistance shall be given under this title to a person who requires such assistance and who * * * (b) is a resident of the state, or, while temporarily in the state, requires immediate medical care which is not otherwise available, provided that such person did not enter the state for the purpose of obtaining such medical care".

In *Matter of Corr v Westchester County Dept. of Social Servs.* (33 NY2d 111, *supra),* the Court of Appeals considered the case of a woman, then 89 years old, who was immediately hospitalized upon entering New York from New Jersey and óne week later was transferred to a private New York nursing home where she had been living ever since. The record revealed that the petitioner therein was born and lived in New York for most of her life. She lived in Westchester County from 1915 to 1962, when she sold her home and went to live with an ailing son in Newark, New Jersey. Following the death of her son in 1969, she remained in New Jersey, some 75 to 80 miles from surviving members of her family who lived in Westchester. Petitioner and her daughter both testified that petitioner moved to New York in 1971 to place her closer to her family, not to obtain medical aid, and that she intended to again take up permanent residence in Westchester. The court phrased the issue as "whether an out-of-State resident, who is immediately hospitalized upon coming into New York and is shortly thereafter transferred to a nursing home, may acquire a New York residence for purposes of qualifying for medical assistance payments" *(id.,* at pp 113-114). On the basis of "the prior relationships of petitioner which establish almost a lifetime of connections with the State, and plausible motivations to resume her residence in this State" *(id.,* at p 114), the court concluded that she was a resident of New York State under section 366 (subd 1, par [b]) of the Social Services Law.

The petitioner herein has presented a similarly strong argument in support of her contention that she is a New York

State resident. Not only did she establish "almost a lifetime of connections" with New York, with a period of residence in New York and a long career working in this State, she presented such plausible reasons for establishing residence here as a long familiarity with the Good Shepherd-Fairview Home and a desire to be near friends and churches in the Binghamton area. As with the petitioner in *Corr v Westchester County Dept. of Social Servs. (supra),* the petitioner herein had abandoned her home in the foreign State, had no abode other than Fairview and had registered to vote in New York. Under these circumstances, we find that she "is a resident of the state" under section 366 (subd [1], par [b]) of the Social Services Law.

The implication in the decision under review that a one-year residency requirement, excluding residency in an institution, could be imposed upon the petitioner ignores the clear prohibition against any such requirement contained in *Shapiro v Thompson* (394 US 618). (See, also, *Memorial Hosp. v Maricopa County,* 415 US 250; *Matter of Corr v Westchester County Dept. of Social Servs.,* 33 NY2d 111, *supra; Matter of Dillingham v Lavine,* 48 AD2d 657.) Although ordinarily a patient or inmate of an institution retains the domicile he had when he entered the institution, where, as here, "the inmate pays his own way, is free to come and go, and has no other place of abode, his conduct may show an intent to establish the institution as his permanent home or domicile" *(Matter of Corr v Westchester County Dept. of Social Servs., supra,* p 116). As to the significance of the statement in the decision that the petitioner entered New York "for the purpose of obtaining * * * care in a health-related facility", we need only point out that once it has been decided that a person is a resident under section 366 (subd 1, par [b]) of the Social Services Law, the motives for entering the State are irrelevant. Only those persons who entered the State on a temporary basis for the purpose of obtaining medical care are excluded from medical assistance under the statute *(Matter of Ruiz v Lavine,* 49 AD2d 1. See, also *Matter of Corr v Westchester County Dept. of Social Servs., supra).*

The determination should be annulled, without costs; the petition should be granted and the respondents directed to provide medical assistance to petitioner as applied for in her application of October 3, 1973.

SWEENEY, J. P., KANE, MAHONEY and HERLIHY, JJ., concur.

Determination annulled, without costs; petition granted and respondents directed to provide medical assistance to petitioner as applied for in her application of October 3, 1973.