OPINION OF THE COURT
Emily Jane Goodman, J.
Respondent Johnpoll and his roommate McDonough moved into an apartment at 87 Christopher Street in 1980. While the building is registered under rent stabilization, Johnpoll and his landlord never entered into a written lease. In 1983 Johnpoll was incarcerated for a term of 15 years and apparently will be eligible for parole in 1987. The rent has been paid by Johnpoll; McDonough makes no claim to being a subtenant or assignee.
Petitioner Chris-Mac Company commenced this holdover proceeding against Johnpoll and McDonough on the grounds that Johnpoll, as a prisoner, cannot maintain his apartment as a primary residence; that Johnpoll subleased his apartment to McDonough without permission; and that under Real Property Law § 235-f Johnpoll must concurrently occupy the apartment in order to permit McDonough to stay there as an occupant. Johnpoll moves to dismiss the petition pursuant to CPLR 3211 and Real Property Law § 235-f.
An analysis of the "primary residence” law is required. On *479 June 1, 1971, the initial primary residence law (L 1971, ch 373; New York State Rent and Eviction Regulations § 18 [9 NYCRR 2100.18]) read as follows: "Any housing accommodations on or after May 1, 1972 which are not occupied by the tenant in possession as his primary residence shall continue to be subject to rent control unless the Administrator issues an order decontrolling such accommodation which the Administrator shall do upon application by the landlord, whenever, it is established by any facts and circumstances which, in the judgment of the Administrator, may have a bearing upon the question of residence, that the tenant maintains his primary residence at some place other than at such housing accommodation.” On May 16, 1972, the law was amended as follows:
"a. Upon application of the landlord, the Administrator shall issue an order decontrolling a housing accommodation where he finds that the tenant in possession maintains his primary residence at some place other than at such housing accommodation.
"b. In making such finding the Administrator shall give due consideration to any facts and circumstances establishing that the housing accommodation is not the tenant’s primary residence, including, but not limited to, the fact that such tenant (1) specifies an address other than such housing accommodation as his place of residence in any tax return, motor vehicle registration, driver’s license or other document filed with a public agency, (2) gives an address other than such housing accommodation as his voting address, or (3) assigns and/or sublets such housing accommodation.” (New York City Rent and Eviction Regulations § 18.)
The term "primary residence” has no established meaning. The term is not defined either in the statutory comment or in the decisions in New York or other jurisdictions. Thus, primary residence cases were decided by the Rent Administrator by weighing the enumerated criteria in the above statute (Matter of Berliner Realty v Joy, 64 NY2d 845; Matter of Sommer v New York City Conciliation & Appeals Bd., 93 AD2d 481, affd 61 NY2d 973).
On June 30, 1983, the State Legislature by virtue of Omnibus Housing Act (OHA) §§ 42 and 55 (L 1983, ch 403) excluded from protection of the city rent laws all "[h]ousing accommodations not occupied by the tenant * * * as his primary residence, as determined by a court of competent jurisdiction.” The OHA did not define primary residence, set forth any *480 criteria for its determination, and left the matter to be decided not by the Rent Administrator but by the courts.
On July 16, 1983, the Commissioner of Housing Preservation and Development (HPD) approved amendment No. 57 to the New York City Rent and Eviction Regulations which amended section 18 (b) of the 1972 law as follows: "b. In making such finding the administrator shall give due consideration to any facts and circumstances establishing that the housing accommodation is not the tenant’s primary residence, including, but not limited to, the fact that such tenant (1) specifies an address other than such housing accommodation as his place of residence in any tax return, motor vehicle registration, driver’s license or other document filed with a public agency, (2) gives an address other than such housing accommodation as his voting address, or (3) assigns and/or sublets such housing accommodation. Provided, however, that the Administrator shall not find that the housing accommodation which is subject to these Regulations is the primary residence of the tenant unless the tenant is either domiciled in the City at the claimed housing accommodation or, if not domiciled in the City, the tenant spent an aggregate or more than one hundred eighty-three days in the preceding calendar year in the City at such accommodation (unless such individual is in active service in the armed forces of the United States or took occupancy at such accommodation during the preceding calendar year) and, in either event, provides proof satisfactory to the Administrator that the tenant either filed a New York City Resident Income Tax return at the claimed primary residence for the most recent preceding taxable year for which such return should have been filed or that the tenant was not legally obligated to file such tax return pursuant to * * * § 601 of the Tax Law because the tenant’s income for such year was below that required for the filing of a return”.
The above amendment provides an alternative test for primary residence: domicile here, or residence here for 183 days a year at the designated apartment in New York City plus in either case the payment of taxes or exemption therefrom. Despite sections 42 and 55 of the OHA designating the courts to determine the issue of primary residence, under the 1983 New York City amendment the Rent Administrator was again designated to determine the issue.
Respondent, being a Federal prisoner, presumably did not earn enough money to obligate him to pay taxes last year. The *481 issue here then is whether a prison inmate’s domicile or primary residence is the prison or his or her home before he or she entered prison.
The only decision that attempts to define primary residence is Coronet Props. Co. v Brychova (112 Misc 2d 212, 213-214), where the court, in effect, equates primary residence with domicile:
"The ordinary meaning of the word 'primary’ is 'first in rank or importance: chief, principal’ (Webster’s Third International Dictionary, p 1800). On the facts of this case, it is clear that this apartment is the tenant’s principal home. It surely is more central than any of the various houses, hotels and dormitories she lives in while on tour. Moreover, her use of this apartment for her piano and personal possessions, and most importantly, her intent to reuse it when her professional life allows, are sufficient to establish it as her legal domicile. Persons engaged in itinerant occupations do not lose their domicile by virtue of their constant travel; see the legion of litigated cases concerning seamen, soldiers, baseball players and the like discussed in New York Jurisprudence (vol 17, Domicile and Residence, § 32 et seq.). (See, also, 25 Am Jur 2d, Domicile, § 46.)
"While there may be instances when a legal domicile is not a tenant’s primary residence within the meaning of the Rent Stabilization Law, the two concepts are not unrelated; legal domicile ordinarily will be sufficient to prove primary residence unless there are unusual circumstances demonstrating that the legal domicile is being maintained for reasons unrelated to housing accommodations. [Cf. Code of the Rent Stabilization Association of New York City, Inc. § 54 (e) (2) (as amended May 1983)], which provides that the domicile of a tenant for tax purposes would create a presumption of residency for rent stabilization purposes. There is no evidence that the tenant here is maintaining this residence for reasons unrelated to her own housing needs, or as a convenient pied á terre to be used for occasional visits to Manhattan. Rather, it is her home.”
Domicile has been defined as: "That place where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning * * * The permanent residence of a person or the place to which he intends to return even though he may actually reside elsewhere.” (Black’s Law Dictionary 435 [5th ed 1979]; see also, People v Platt, 117 NY 159.)
*482 The way in which a person can change his or her domicile was discussed in Westbury Union Free School Dist. v Amityville Union Free School Dist. (106 Misc 2d 189, 191 [Sup Ct, Nassau County 1980]) which also involved the issue of a prisoner’s domicile: "The voluntary relinquishment of a prior residence and the voluntary establishment of a new place of abode, albeit institutional, is an essential ingredient in a determination of residence or domicile. The freedom of choice, to come or go at one’s whim or pleasure, at one’s own expense or at the expense of others made for one’s benefit are bona fide elements of determining residence (Matter of Corr v Westchester County Dept. of Social Servs., 33 NY2d 111; Matter of Casey v Lavine, 54 AD2d 250; Matter of Seitelman v Lavine, 36 NY2d 165; see, also, 17 NY Jur, Domicile and Residence, § 36).”
Johnpoll obviously has not chosen the prison as his new home and intends to return to 87 Christopher Street when he is paroled or released and has submitted an affidavit to that effect. He has not voluntarily changed his domicile. Nor does a person involuntarily lose his domicile by being in prison (People v Cody, 143 NY 100; Wendel v Hoffman, 24 F Supp 63, appeal dismissed 104 F2d 56; Urbano v News Syndicate Co., 232 F Supp 237 [SDNY], reversed on other grounds 358 F2d 145). NY Constitution, article II, §4 provides that: "[N]o person shall be deemed to have gained or lost a residence, by reason of his presence or absence * * * while confined in any public prison.” As the court stated in People v Cody (supra, p 106): "Before going to the prison, the defendant had a residence somewhere, and before he could change that it was requisite that he should go to the Tombs intending to make that his home and domicile, either permanently or for some unlimited time without any intention of returning or reverting to his former residence, and in fact intending thereby to change his former residence to the Tombs. The domicile or home requisite as a qualification for voting purposes means a residence which the voter voluntarily chooses and has a right to take as such, and which he is at liberty to leave, as interest or caprice may dictate, but without any present intention to change it. It is preposterous to suppose that the defendant had within these rules * * * made the Tombs his residence. He was a single man. The Tombs is not a place of residence. It is not constructed or maintained for that purpose. It is a place of confinement for all except the keeper and his family, and a person cannot under the guise of a commitment, or even *483 without any commitment, go there as a prisoner, having a right to be there only as a prisoner, and gain a residence there.”
Accordingly, this court holds that a prisoner does maintain a primary residence at his apartment under the OHA.
Petitioner also argues that McDonough does not have the right to occupy the apartment under Real Property Law § 235-f since Johnpoll does not actually occupy the apartment as a tenant.
Real Property Law § 235-f (1) (a) states that " 'Tenant’ means a person occupying or entitled to occupy a residential rental premises who is either a party to the lease or rental agreement”. Real Property Law § 235-f (4) which speaks of a lease held in the names of two tenants requires that at least one of those tenants maintain the premises as his primary residence or domicile but there is no such requirement under section 235-f (3) which is the subdivision which applies to the instant facts.
As indicated above McDonough neither claims to be a subtenant or assignee nor a tenant accepted by the petitioner based upon any payment of the rent in his name rather than that of Johnpoll. Thus McDonough, since 1980 and until now, is an authorized occupant of the apartment.
As to the points raised by petitioner’s counsel that the order to show cause is defective because his copies of the affidavits are unsigned, that is clearly a failure to conform the copies. The original court papers are duly signed and notarized and were at the time the order to show cause was submitted.
Accordingly, the petition is dismissed. The motion for a protective order is rendered moot.