In the Matter of THEODORE H. OLIVER, JR., Respondent-Appellant, v COUNTY OF BROOME et al., Appellants-Respondents.

Third Department, December 5, 1985

### APPEARANCES OF COUNSEL

*John E. Murray, County Attorney (Alfred Paniccia, Jr.,* of counsel), for County of Broome and another, appellants-respondents.

*Robert Abrams, Attorney-General (Calvin M. Berger* and *William J. Kogan* of counsel), for Edward V. Regan, appellant-respondent.

*Ball & McDonough, P. C. (Kevin F. McDonough* of counsel), for respondent-appellant.

### OPINION OF THE COURT

YESAWICH, JR., J.

In July 1976, petitioner was appointed a Deputy Sheriff for respondent County of Broome (County). By reason of that appointment, the effective date of petitioner's membership in the New York State Employees' Retirement System was July 12, 1976. Thereafter, in May 1979, while in the course of his employment, petitioner was severely injured in a vehicular accident. He was eventually able to resume his regular duties on road patrol, only to be reinjured while making an arrest. From October 1983 to May 1984, when last employed as a Deputy, he performed only light duties. Throughout these various periods, the County paid petitioner his regular salary pursuant to General Municipal Law § 207-c.

In October 1983, the County and respondent Anthony C. Ruffo, as County Sheriff (Sheriff), requested that petitioner apply for accidental disability retirement. He acceded and the application was submitted to respondent Comptroller who, in August 1984, granted it on the ground that petitioner was permanently incapacitated from the performance of his duties. Based on the date petitioner commenced employment with the County, the Comptroller concluded that petitioner, who was then 33 years of age, was entitled to disability retirement under Retirement and Social Security Law article 15, which governs Tier IV retirements; section 605 thereof limits the retirement allowance to one third of the member's final average salary, which in petitioner's case was estimated at $17,807. In September 1984, petitioner was removed from the County payroll and notified that the effective date of his disability pay was September 22, 1984.

Believing himself a member of Tier I or Tier II, and by reason of Retirement and Social Security Law § 63 or § 363 to be entitled to disability retirement in an amount equal to three fourths of his final average salary, petitioner first unsuccessfully sought to have the Comptroller hold a hearing and redetermine his retirement status. He then timely* initiated this CPLR article 78 proceeding wherein he sought the following relief: withdrawal of his application for accidental disability retirement because of a claimed mutual mistake; rescission of the Comptroller's determination awarding accidental dis-

---

* The Comptroller waived argument to the contrary by neglecting to raise the defense in a responsive pleading or motion to dismiss (CPLR 3211 [e]; *Matter of Ruiz v Lavine*, 49 AD2d 1, 2, n 1).

ability retirement pursuant to Retirement and Social Security Law article 15; reinstatement to the County payroll as a disabled policeman pursuant to General Municipal Law § 207-c; and counsel fees.

Special Term declined to order withdrawal of the application but did annul the decision dictating retirement via Retirement and Social Security Law article 15 and, instead, remitted the matter to the Comptroller with a direction to process petitioner's application pursuant to Retirement and Social Security Law § 63. It also ordered that petitioner be returned to the County payroll until issuance of a new determination by the Comptroller, and denied the claim for counsel fees. Cross appeals by all of the parties ensued.

Petitioner's status within the Retirement System is the crux of this controversy. The Comptroller urges that petitioner's enrollment as a Tier II employee on July 12 1976—the date he entered the system—was, because of the State's considerable fiscal difficulties at the time, temporary only and that he became a Tier III employee as of January 1, 1977. It is the Comptroller's submission that the legislative design is such that for those who, like petitioner, began governmental service after July 1, 1976, the date upon which Tier II benefits ceased (see, Retirement and Social Security Law § 451), and July 27, 1976, the effective date of the Tier III legislation (L 1976, ch 890), those employees became Tier II members but were not entitled to the benefits of the Retirement System until January 1, 1977, when they then became eligible to participate in the system, initially as Tier III employees and subsequently as Tier IV employees (Retirement and Social Security Law § 600 [a]).

The pertinent legislative history does not indicate what the Comptroller's arcane argument supposes. The Tier II retirement plan, created by the Laws of 1973 (ch 382) and later extended until June 30, 1976, was prolonged by the Laws of 1976 (ch 890) until December 31, 1976 (Retirement and Social Security Law § 451). We are of the view that by this extension the Legislature at the very least made the Tier II plan available to public employees who, like petitioner, became members of the retirement system between July 1, 1976 and the effective date of Tier III.

Moreover, because Tier II benefits, including petitioner's disability retirement income, are greater than comparable benefits under Tier III or IV, the tier to which the Comptrol-

ler ultimately assigned petitioner, the Comptroller's rationale violates NY Constitution, article V, § 7 for it works to diminish and impair petitioner's retirement benefits. That article of the Constitution serves "to fix the rights of the employee at the time he became a member of the system" *(Birnbaum v New York State Teachers Retirement Sys.,* 5 NY2d 1, 9). Inasmuch as petitioner's right to disability benefits was established on the date he commenced employment as a Tier II employee, the benefits secured to him are to be measured by Retirement and Social Security Law § 63, not Retirement and Social Security Law article 15.

Petitioner's claim that he is a "policeman" and hence entitled to receive benefits under Retirement and Social Security Law § 363 is not at all persuasive. The pertinent definitional provisions of the Retirement and Social Security Law do not include Sheriff's departments, or their members, within the meaning of "police service" *(see,* Retirement and Social Security Law § 302 [11] [c]); furthermore, neither the Comptroller, who administers the retirement program, nor the courts have interpreted "police service" as embracing Sheriff's deputies *(see, e.g., New York State Deputies' Assn. v New York State Civ. Serv. Commn.,* 57 AD2d 550).

And given that petitioner has not demonstrated that the duties performed by a Deputy Sheriff are the same as those performed by police officers, and given further the expense of operating the Retirement System, we are convinced that the distinction made by the Comptroller bears a rational relation to legitimate government interests and, accordingly, find no merit in petitioner's equal protection argument *(see, Frontiero v Richardson,* 411 US 677; *People v Whidden,* 51 NY2d 457, *appeal dismissed* 454 US 803).

With respect to petitioner's claim that his application for retirement benefits should have been vacated and annulled on the basis of mistake, it is noteworthy that petitioner's consent to filing of the application with the Comptroller was unnecessary (General Municipal Law § 207-c [2]). Consequently, this misunderstanding or mistaken impression of the benefits available to him was, even if proven, of no legal significance.

Since petitioner's application should have been evaluated under Retirement and Social Security Law § 63, Special Term's remittal of the matter to the Comptroller for processing and reinstatement of petitioner to the County payroll was appropriate. While there is little doubt that petitioner quali-

fies for retirement, open questions do remain as to the effective date of his retirement, a determination reserved by law to the Comptroller (Retirement and Social Security Law § 63 [d]).

With respect to the issue of counsel fees, 42 USC § 1988 authorizes an award in State court actions where the claimant seeks relief on State and Federal grounds and the Federal claim of an unlawful deprivation of constitutional rights (42 USC § 1983) is, among other things, not patently frivolous *(Matter of Johnson v Blum,* 58 NY2d 454, 458, n 2). Here, although the Comptroller erroneously processed petitioner's retirement application under Retirement and Social Security Law article 15 instead of Tier II, there is no substance to petitioner's assertion that his due process or equal protection rights were violated.

KANE, J. P., CASEY, LEVINE and HARVEY, JJ., concur.
Judgment affirmed, with costs.