*587 OPINION OF THE COURT
Allan L. Winick, J.
Plaintiff, Allstate Insurance Company, brings this action for a declaration that the policy issued to defendant does not cover the loss claimed by the plaintiff in the underlying wrongful death action. Specifically, it takes the form of seeking a declaration that the decedent in the action was an "insured person”, under the terms of the policy in question.
Some background would be helpful to explain the reasons for the requested relief.
Allstate issued a "Homeowner’s” policy to the individual defendants on its standard, plain English form.
On July 22, 1984, there was a fire in the premises covered by the policy. In that fire, Chen Shun Lung, defendant’s father (father-in-law of defendant Kuei-Yin Lin Lung, but for simplicity he will be referred to herein as father), was badly burned, ultimately resulting in his death about one month later.
The son then applied for and was granted limited letters of administration to enable the father’s estate to sue the son and his wife, the homeowners, for wrongful death.
Allstate, now, in this declaratory action, contends that the decedent was an "insured person” under the policy and thus his estate would not be entitled to recover for the alleged negligence causing his death.
In other words, the estate of Chen Shun Lung, a person covered by the policy, as an "insured”, cannot sue to recover for negligence of another "insured” under the policy.
Both sides agree that if the court finds the decedent to be an "insured person” under the homeowner’s policy, his estate would not be entitled to recover damages against his son and daughter-in-law under that policy. Specifically, if in this action the court declares the decedent to be an "insured person” the action for wrongful death would fall.
In construing an instrument, the court looks to that instrument to determine the rights it confers and the obligations it imposes (New York World-Telegram Corp. v McGoldrick, 298 NY 11, 18; Matter of Great Lakes-Dunbar-Rochester v State Tax Commn., 102 AD2d 1, 5; Dime Laundry Serv. v 230 Apts. Corp., 120 Misc 2d 399, 401).
The court must look to the policy to determine if decedent was an "insured person”.
The policy defines "insured person” as follows: "Insured *588 person means you and, if a resident of your household, any relative and any dependent person in your care”.
There are, under such definition, three classes of persons who are covered as "insured person”.
(1) The insured,
(2) if a resident of the household, any relative, and
(3) if a resident of the household, a dependent person in the insured’s care.
The first and third classes are clearly inapplicable to this case. It is toward the second class that we look.
The second class is a resident of the household who is a relative. Nowhere in the policy is there a definition of "resident”.
Let us first examine the testimony given at the trial.
The son and his family and the father are Taiwanese. The son works for China Airlines and, as such employee, the locale of his work is moved from country to country periodically.
In Taiwan he and his father owned separate apartments in adjoining buildings of a housing complex. From time to time, however, the father would stay with the son in the son’s apartment.
The son had been sent to Hong Kong to work and he took his family with him, but his father remained in Taiwan.
Sometime in February 1984 the son was transferred to New York and he rented an apartment with two bedrooms in Flushing. His three sons stayed in one bedroom, he and his wife in the other.
On or about February 26, 1984, the father came from Taiwan, arriving with a single suitcase containing some warmer clothes for the winter and took up living in that apartment, causing some rearrangement of the housing accommodations.
At this point, it should be noted that the father was almost 80 years old and was a retired physical education teacher on pension from the Taiwanese government.
In May of that year, the son and his wife bought a house in Elmont and moved there, not only with the sons but also with the father.
This house had three bedrooms, one for son and his wife, one for the three sons and one for the father, though from time to time one of the boys would sleep in the same room as his grandfather. There was testimony that this home had two *589 kitchens. However, there was no evidence that the father used this second kitchen.
When the father had moved in with the son in Flushing, a bed was purchased for him and, in due course, was moved to Elmont.
The father had a Taiwanese passport and a United States visa which required him to leave the United States by August 25, 1984. From the date of the fire on July 22, 1984 until the date of his death in August, the father was in the hospital. An application for an extension of his right to remain in the United States had been prepared by the son and signed by the father, but he died before it could be filed.
The father had no bank account in the United States, nor driver’s license, and he still owned the apartment in Taiwan.
Various definitions of "resident” or "residence” are found in the books. The definition of a "residence” has been causing the courts problems over the years. The term "reside” (or "residence”) is not one that can be given a uniform definition wherever it appears in legislation, but must be construed in relationship to the particular statute involved (28 CJS, Domicile, § 2; Matter of Contento v Kohinke, 42 AD2d 1025). Webster’s New Collegiate Dictionary (1979) defines a resident as a person living in a place for some length of time and one who resides in a place.
In State of New York v Collins (78 AD2d 295, 297) the Appellate Division, Third Department, states: "We adhere to the established rule that a proper construction of the term resident depends on the particular subject matter and the context in which it is used * * * and where a statute prescribes 'residence’ as a qualification for a privilege or the enjoyment of a benefit, the word is equivalent to 'domicile’ ”.
The Court of Appeals has defined "residence” as it is to be used in interpreting CPLR 202 ("cause of action accruing without the state”) as it relates to whether a person has a significant connection with some location in the State as a result of living there for some length of time during the course of a year (Antone v General Motors Corp., 64 NY2d 20, 30).
The Appellate Division, Second Department, gives us some guidance as to when a person is a "resident” for purposes of venue. In Siegfried v Siegfried (92 AD2d 916) the court stated: "Although a person may have more than one residence for venue purposes (Hurley v Union Trust Co. of Rochester, 244 *590 App Div 590, 593), 'to consider a place as such, he must stay there for some time and have the bona fide intent to retain the place as a residence for some length of time and with some degree of permanency’ (Katz v Siroty, 62 AD2d 1011, 1012).” This is distinguished from a "domicile” which not only requires the physical presence of the person but also the intent to make this one’s home. (Matter of Carter v Carter, 19 AD2d 513.)
The Election Law defines residence (Election Law § 1-104 [22]) as follows: "The term 'residence’ shall be deemed to mean that place where a person maintains a fixed, permanent and principal home and to which he, wherever temporarily located, always intends to return.” (See also, Auerbach v Kinley, 594 F Supp 1503 [DCNY 1984].)
In the case of Westbury Union Free School Dist. v Amityville Union Free School Dist. (106 Misc 2d 189, 191) the court defines "residence” as it relates to the Education Law concerning which school district has the responsibility of providing a child with public school education. "The voluntary relinquishment of a prior residence and the voluntary establishment of a new place of abode, albeit institutional, is an essential ingredient in a determination of residence in domicile. The freedom of choice, to come or go at one’s whim or pleasure, at one’s own expense or at the expense of others made for one’s benefit are bona fide elements of determining residence (Matter of Corr v Westchester County Dept. of Social Servs., 33 NY2d 111; Matter of Casey v Lavine, 54 AD2d 250; Matter of Seitelman v Lavine, 36 NY2d 165; see, also, 17 NY Jur, Domicile and Residence, § 36).”
Although the court in its research finds nothing directly in point, there is a line of cases that is helpful in making the determination in this case. The question involved in one of these cases is whether an unemancipated infant was a resident of his mother’s household on the date of the accident.
In the case of Matter of Allstate Ins. Co. (Luna — MVAIC) (36 AD2d 622) the policy contained an indorsement which defined an insured person as the " 'named insured and, while residents of the same household, his spouse and the relatives of either’ ”. It appears that prior to the time of the accident, the insured wife left the marital home unilaterally and took her infant son with her to his grandmother’s house. There is no question that when they were all living under the same roof, each one of them is covered by the policy. However, once he left the home, is he still covered? The court found in Allstate *591 (supra) that he was still covered. This " 'uninsured motorist’ provision should be liberally construed in favor of a member of the named insured’s family” (36 AD2d, at p 623). The court stated that although the child was involuntarily removed from the household, he is still considered covered under the policy.
In the case of McGuinness v MVAIC (35 Misc 2d 827, 828) where a son-in-law, residing in the same household as the insured, was injured in an accident, and was a relative of the insured, the court stated, in determining whether a claimant is a covered person, "[a]n examination of the cases indicates that where a clause in a policy is ambiguous it will be construed in that sense which is most favorable to the insured. (Appelton v. Merchants Mut. Ins. Co., 16 A D 2d 361, 363.) In accordance with this rule the term is construed narrowly where a policy excludes a relative from coverage and broadly where a policy extends coverage to a relative.”
Since the instant case is the converse of McGuinness (supra) an argument, could be made that the policy should be construed liberally and not include the plaintiff as a member of the household. This is consonant with extending coverage to the insured son and daughter-in-law against the claim of the father’s estate.
In the case of Smith v Pennsylvania Gen. Ins. Co. (32 AD2d 854) the Appellate Division gives us some insight into how to interpret an undefined word in an insurance policy. There, the court construed the word "relative” and stated that it should be construed either narrowly or broadly, as the case may be, in order to provide coverage. The final test is one of reasonability — what meaning do the words convey as understood in their plain, popular and ordinary sense — from the viewpoint of the common man. See also, Craig v Craig (24 AD2d 588) where the court construes "residence” to afford coverage, although claimant was away in the military service.
This brings us to the case of Hollander v Nationwide Mut. Ins. Co. (60 AD2d 380, 382). The facts there are as follows:
"While operating a vehicle owned by her sister and insured by defendant, plaintiff was involved in a serious accident giving rise to extensive potential liability. Plaintiff’s own automobile was also insured with defendant under a policy which provided excess coverage for operation of non-owned vehicles, provided that such other vehicle:
" '(i) is not owned by * * * any member of the same household * * *
*592 " '(ii) is not furnished for regular use to * * * a member of the same household’.
"On the date of the accident, plaintiff was living at the home of her parents with her sister. Plaintiff obtained declaratory relief determining that the clause excluding coverage of nonowned vehicles when owned by a 'member of the same household’ did not apply in the circumstances presented here.”
As in the instant case, this case construes a disputed phrase ("member of the same household”), which is not defined in the policy. The court stated (supra, p 383): "Physical presence in the home alone is insufficient to establish a residence, particularly where, as here, plaintiff had previously established other legal residences.” Although the cases are dissimilar in their fact pattern, the theory developed is the same. "Moreover, the rule of construction applied to ambiguous terms in insurance contracts strongly favors the insured. 'Where an insurer attempts to limit liability by use of an ambiguously worded term which is subject to more than one reasonable construction, the courts will construe it strictly against the insurer (Sperling v. Great Amer. Ind. Co., 7 NY2d 442, 447).’ (Matter of Country-Wide Ins. Co. v Wagoner, 57 AD2d 498, 506.) (See, also, Lipton Ins. v Liberty Mut. Ins Co., 34 NY2d 356; Greaves v Public Serv. Mut. Ins. Co., 5 NY2d 120.) This principle holds particularly true in cases where the ambiguity is in an exclusionary clause. (Sincoff v Liberty Mut. Fire Ins. Co., 11 NY2d 386; Sperling v Great Amer. Ind. Co., supra; Calkins v Merchants Mut. Ins. Co., 59 AD2d 1052; American Fid. Fire Ins. Co. v Pardo, 32 AD2d 536; Smith v Pennsylvania Gen. Ins. Co., 32 AD2d 854, affd 27 NY2d 830.)” (60 AD2d, at p 384.)
Applying these various definitions of "resident” or "residence” with the appellate admonition concerning the construction of policies of insurance to the evidence in this case, the court finds that the father was not a resident of the household, albeit that his stay in this country was an extended one rather than a short visit with his family.
Of particular significance is the lack of any attribute of an intention to remain — no bank account, no loosening of his tie to his homeland, no immigration status other than a temporary one, a retention of his home in Taiwan — these are indications of a mind to return — especially when one considers the lack of permanence of his son’s residence here due to the nature of his occupation.
*593 Therefore, in interpreting this policy, the court construes "insured person” as not including the father, construing the ambiguously worded term strictly against the carrier, to afford coverage to the decedent’s son and daughter-in-law so that the father’s estate may sue under the terms of the homeowner’s policy.
Settle judgment declaring that Chen Shun Lung was not an "insured person” under the policy.