OPINION OF THE COURT
Phyllis Gangel-Jacob, J.
Respondent’s motion is granted and petitioner’s cross motion is denied except as noted.
This case presents the issue whether a landlord’s refusal to *189 approve a two-year sublease is unreasonable within the meaning of Real Property Law § 226-b, if the landlord based its refusal on the tenant’s being sentenced to four years in prison with a possibility of parole that may or may not allow the tenant to return to the apartment as soon as the sublease ends.
The court holds the petitioner’s (landlord’s) disapproval was unreasonable; consequently, respondent Quinn, the prime tenant, was entitled to sublet the apartment to respondent Buckles, according to Real Property Law § 226-b (2) (c) and may not be evicted.
Real Property Law § 226-b (2) (a) gives a tenant renting premises under an existing lease in a building with four or more residential units the right to sublet the premises subject to the landlord’s written consent in advance. If the landlord withholds consent unreasonably, the prime tenant may sublet in accordance with the request. (Real Property Law § 226-b [2] [c].)
The prime tenant must request consent by complying with specific documentation requirements. (§ 226-b [2] [b].) Landlord’s attorney states in her affirmation that Quinn’s request was in conformance with the statute; thus, landlord evidently withdraws its earlier allegation that Quinn did not send landlord a duly acknowledged copy of the sublease. At any rate, even if the sublease was not acknowledged, it was signed and the entire sublet request substantially complied with the requirements. (See, Medina v Brabert Realty Co., 114 Misc 2d 816, 826 [Sup Ct, NY County 1982].)
Moreover, Quinn and subtenant Buckles completed the questionnaires that landlord promptly sent them to elicit additional information to enable landlord to determine whether landlord might reasonably reject the sublease. (§ 226-b [2] [c].) Promptly after receiving the completed questionnaires, landlord notified Quinn of his decision to reject the proposed sublease.
The New York City Rent Stabilization Law (Administrative Code of City of New York § 26-511 [c] [12] [formerly § YY51-6.0 (c) (12)]) adds the requirement that a tenant requesting a sublet must establish that at all times the tenant has maintained the residential unit as his or her primary residence and that the tenant intends to occupy the unit as his or her primary residence at the expiration of the sublease. (§ 26-511 [c] [12] [b].) Landlord primarily relies on this requirement to *190 reject the sublease, arguing that Quinn’s four-year sentence to Federal prison means he does not intend to reoccupy the premises at the end of the sublease, because he will be unable to do so.
Quinn adequately established that he has been using the apartment as his primary residence. He submitted utility and telephone bills listing the apartment as his address. Quinn asserts in his affidavit that he maintains a bank account — his only account — at a bank in Manhattan. Moreover, he states that he has always worked in New York City and that until shortly before his incarceration he owned a restaurant in Manhattan.
Furthermore, Quinn has provided unusually detailed evidence of his intention to maintain the apartment as his primary residence when he is released from prison. In addition to the facts already described, Quinn and Buckles attest that Quinn has left his furniture, clothing and other personal possessions in the apartment. Quinn also states that his mother and sisters live in the metropolitan area and submits an affidavit of his fiancée, who says she and her family have always lived in the New York City area. His fiancée also states that she lives and works in Manhattan, and intends to live with Quinn in the apartment when they are married after his release. Quinn also attaches an affidavit by a Manhattan restaurateur who asserts that Quinn is assured of employment at his restaurant when Quinn returns from prison. In short, the affidavits and exhibits show that Quinn’s familial, professional and residential ties are all to New York City and to the apartment in question.
Quinn has not only demonstrated that he intends to live in this apartment and nowhere else when he is released, he has also shown his intention to return at the end of the sublease. Quinn was sentenced to four years in a Federal penitentiary. Nevertheless, he will be eligible for parole after serving one third of the sentence, i.e., lVa years. (18 USC § 4205 [a].) The sentencing guidelines covering the crime to which Quinn pleaded guilty contain the recommendation that the offender spend 24 to 36 months in prison before parole. (28 CFR 2.20.)
Therefore, if Quinn spends the minimum time in prison, he could return to the apartment by or before the end of the two-year sublease. Landlord has not disputed this possibility nor has landlord asserted any reason to believe Quinn would have to serve his full sentence.
*191 Landlord may not rely on the four-year sentence to reject a two-year sublease. Subletting in accordance with statutory requirements is permissible "for the limited purpose of allowing a legitimate residential tenant in actual occupancy to retain his home when a temporary absence becomes necessary.” (Hutchins v Conciliation & Appeals Bd., 125 Misc 2d 809, 817 [Sup Ct, NY County 1984].) A landlord’s refusal of a sublet request is only reasonable if based on objective grounds: "the proposed sublessee(s)’ financial responsibility, identity or suitability for the particular apartment or building, legality of the proposed use or nature of the occupancy or any other sound real estate business, excepting loss of profit or property control.” (Kruger v Page Mgt. Co., 105 Misc 2d 14, 34 [Sup Ct, NY County 1980], appeal dismissed 80 AD2d 525 [1st Dept 1981].)
Landlord’s reservations do not concern the circumstances of the sublease, but rather, the occupancy of the apartment after the end of the sublease. To be sure, landlord alleges that Quinn’s lack of income while in prison fails to guarantee that the rent will be paid during the sublease. However, Buckles established in his response to landlord’s questionnaire that he is employed and has a very substantial income of $61,000 per year, which will enable him to pay the rent.
Even if Quinn is not released from prison exactly at the end of the sublease, he reasonably expects to return as soon as he can. He may not extend the sublease beyond two years. (Administrative Code §26-511 [c] [12] [f].) Nevertheless, a tenant does not lose an apartment that is his or her primary residence because of a temporary absence. (530 Second Ave. Co. v Gold, NYLJ, June 28, 1985, at 12, col 1 [App Term, 1st Dept] [tenant studying at law school in Washington, D. C., retains primary residence at New York City apartment]; see, Heller v Joy, NYLJ, Feb. 22, 1984, at 6, col 1 [Sup Ct, NY County] [tenant in nursing home did not lose primary residence].)
Chris-Mac Co. v Johnpoll (130 Misc 2d 478, revd 134 Misc 2d 597) supports this reasoning. In that case the tenant, a prisoner, had not attempted to sublet the apartment with the landlord’s approval pursuant to Real Property Law § 226-b. The Appellate Term, First Department, determined that the "roommate law”, Real Property Law § 235-f, did not apply because the tenant was in prison and not presently sharing the apartment with the other occupant; thus, the court found *192 a cause of action to evict the tenant for subletting or assignment without the landlord’s consent. (Supra, 134 Misc 2d 597, 598.) The Appellate Term did not disturb the Civil Court’s finding that the apartment remained the tenant’s primary residence even though he was incarcerated. (Chris-Mac Co. v Johnpoll, 130 Misc 2d 478, 482 [Civ Ct, NY County 1985], revd 134 Misc 2d 597, 598 [App Term, Sandifer, J., dissenting], supra.)
To allow landlord to reject the sublease and evict Quinn would be unreasonable from the standpoint of public policy as well as law. Quinn’s readjustment to society upon his release from prison would be hindered if he had no home to which he could return.
Landlord also asserts that it need not approve the sublease because the sublease extends beyond the main lease and was not made explicitly subject to Quinn’s right to renew the main lease. This interpretation is incorrect. The New York City Rent Stabilization Law specifies that a sublease may extend beyond the term of the main lease and in that event, the sublease is subject to the prime tenant’s right to a renewal lease. (Administrative Code § 26-511 [c] [12] [g].) Moreover, Quinn has amply indicated his intention to return to the apartment, which entails his signing a renewal lease.
Accordingly, Quinn and Buckles’ motion for summary judgment dismissing the petition for failure to state a cause of action is granted. Landlord’s cross motion is denied to the extent it asks for summary judgment. Quinn was entitled to sublet the apartment after landlord’s unreasonable refusal to consent to the sublet, and therefore Quinn may not be evicted for subletting without landlord’s consent. (Real Property Law § 226-b [2] [c].) The court need not address the other alleged grounds for dismissing the petition.
Landlord’s motion is granted to the extent it asks that the counterclaims be dismissed. The first counterclaim is dismissed because costs and attorney’s fees may only be recovered pursuant to Real Property Law § 226-b (2) (c) if landlord acted in bad faith in withholding consent. The court finds as a matter of law that landlord did not act in bad faith by asserting a particular interpretation of the law, one that did not ultimately prevail, as a ground for rejecting the sublease.
The second and third counterclaims are dismissed without prejudice to Quinn and Buckles bringing them as a plenary action, because no summary proceeding is pending after the *193 petition is dismissed. The fourth counterclaim is dismissed because it could apply only to a proceeding based on nonprimary residence. Landlord’s motion is denied as moot insofar as it seeks to have the affirmative defense of lack of personal jurisdiction dismissed.