[906 NYS2d 236]

In the Matter of PAUL S. BLOCK (Admitted as PAUL STUART BLOCK), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, August 17, 2010

**APPEARANCES OF COUNSEL**

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Stephen P. McGoldrick* of counsel), for petitioner.

*Richard M. Maltz* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Paul Stuart Block was admitted to the practice of law in the State of New York by the Second Judicial Department on July 19, 1989. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

On April 3, 2001, this Court suspended respondent for six months for deliberately deceiving clients (a husband and wife) through lies and fabrication of documents to corroborate those lies, and by neglecting the clients' affairs in violation of Code of Professional Responsibility DR 1-102 (a) (4) and DR 6-101 (a) (3) (22 NYCRR 1200.3 [a] [4]; 1200.30 [a] [3]), respectively (*Matter of Block*, 282 AD2d 12 [2001]). By order entered November 29, 2001 (288 AD2d 168 [2001]), this Court reinstated respondent to the practice of law, without a hearing, since the suspension was for no more than six months.

In February 2008, respondent was served with a notice and statement of charges alleging that he: (1) neglected a legal matter in violation of DR 6-101 (a) (3); (2) repeatedly made misrepresentations to a client in violation of DR 1-102 (a) (4) (conduct involving dishonesty, fraud, deceit or misrepresentation); and (3) by committing the aforementioned conduct, engaged in conduct that adversely reflected on his fitness to practice law in violation of DR 1-102 (a) (7). Respondent submitted an answer to the charges in which he admitted the factual allegations, but denied that his actions constituted professional misconduct.

A Referee held a hearing and in a report sustained all three charges and recommended a one-year suspension. A Hearing Panel then heard oral argument and issued a report in which it affirmed the Referee's findings with respect to the sustained charges, but modified the recommended sanction by increasing the suspension to 18 months.

The Committee now moves pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) (2), to disaffirm the reports of the Referee and Hearing Panel, only to the extent of their recommended sanctions and, instead, seeks a suspension of no less than four years. Respondent opposes and requests that this Court issue a six-month suspension.

The Referee found that in February 2006, respondent's law firm was retained by Parry Murray & Company, Ltd., a U.K.-based firm, to collect $75,000 owed by Scalamandre Silks, Inc.

In the nine months following his retention, respondent failed to institute litigation on behalf of this client and made repeated, deliberate misrepresentations concerning the status of the case via e-mail to Eoin Campbell, Parry Murray's financial controller. Beginning in late May 2006, respondent misrepresented to Mr. Campbell that an action had been commenced. Respondent's misrepresentations about the case continued into October 2006.

Mr. Campbell did not testify but several e-mails were introduced at the hearing. One such e-mail was from Campbell to respondent seeking a copy of a default judgment respondent told him had been obtained against Scalamandre. Another e-mail from Mr. Campbell stated, in part, "Please get me a copy of the judgement to me urgently. This is causing me a lot of problems and will cost someone their job on Friday unless we get that judgement." An e-mail was sent on July 20, 2006 to Campbell from respondent promising to send a copy of the judgment which "will be ready early next week." On August 10, 2006, respondent e-mailed Campbell advising him, in relevant part:

> "I believe we are close to gaining the release of funds to satisfy the debt. As often happens when a defendant sees that their assets are being taken, they try to appear in court and request a hearing to open up their original default which occurred when they did not appear.
>
> "I have to appear in court on August 17, 2006 for a hearing on this matter. I will immediately forward a copy of the judge's decision next week."

Respondent prepared a draft of an "Affidavit in Support" for Eoin Campbell, which respondent faxed to him on October 16, 2006 and which was characterized as supporting an application to the court for entry of a default judgment against Scalamandre.

In his February 2007 answer to the disciplinary complaint, respondent asserted that he had "advised the client of the nature of the lawsuit that would need to be commenced," characterized his communications with Mr. Campbell as "unintentional miscommunications," and denied that he committed professional misconduct. It was not until he appeared for his sworn deposition almost nine months later in November 2007 that respondent changed his position, and acknowledged that he had made false representations to his client, that they were made as a result of stress, and that he had begun consulting with a psychiatrist during the week of the deposition for this problem.

The disciplinary charges filed herein were brought based upon information provided to the Disciplinary Committee by Edward Weissman, an attorney subsequently hired by Parry Murray to investigate the status of the matter. Weissman testified before the Referee that prior to being retained, he checked with the court system to see if, in fact, an action had been commenced, but could not find any such record. After he reported to Eoin Campbell, Campbell sent Weissman documents forwarded to Campbell by respondent. At that point Weissman was retained by Parry Murray to commence a lawsuit against Scalamandre. In addition, Weissman sent two letters to respondent on November 3 and November 10, 2006, demanding a refund of the $4,000 retainer paid by Parry Murray. When respondent failed to respond to the letters, Weissman was forced to commence an action against respondent and his firm on behalf of Parry Murray. When Weissman reported these events to the Disciplinary Committee in a letter dated December 1, 2006, he noted that Parry Murray "independently confirmed that neither Mr. Block nor his firm had commenced any lawsuit." Weissman testified that respondent finally repaid the retainer to Parry Murray, but not until after Weissman sent his letter to the Departmental Disciplinary Committee (DDC).

Respondent admitted before the Referee that he had repeatedly misled his client but asserted it was aberrational. Notably, he testified that some time in September or early October 2006, possibly Columbus Day (October 12), he telephoned Campbell and essentially admitted that he never commenced an action against Scalamandre. Thus, respondent's testimony was that he notified the client of his inaction well before Weissman filed his complaint with the DDC on December 1, 2006. According to respondent, the "Affidavit in Support" he faxed Eoin Campbell on October 16, 2006 was for the purpose of moving for a judgment in lieu of a complaint, which implicitly would have confirmed to the client that no action had been started, and not in support of a default judgment. Respondent testified further that he returned the retainer to Parry Murray in November, before Weissman's letter to the DDC had even been sent. As the Hearing Panel concluded, it is not clear from this record exactly when the amount of the retainer was repaid, only that it was.

In mitigation, respondent testified that he had consulted with a psychiatrist, was taking medication for epilepsy, is the sole support for his wife and two children, has learned better organizational skills and ways of dealing with stress, has

performed pro bono work through the Brooklyn Volunteer Lawyers' Alliance, and was sorry about the way he mishandled the collection matter. A character witness, Joseph Monteleone, Esq., who had known respondent for 16 years, testified regarding respondent's excellent professional reputation, but he was unaware of the basis of the disciplinary proceeding.

The Committee urged the Referee to suspend respondent for at least four years in view of, inter alia, his previous six-month suspension for the exact same misconduct and his false testimony before the Referee. Respondent's counsel suggested censure would be appropriate since the complainant, with the approval of his client, withdrew his complaint; the client had received a full refund from respondent; respondent cooperated fully with the Committee and expressed remorse; and he had not been motivated by personal gain.

In a report dated June 26, 2008, the Referee sustained all three charges and recommended respondent be suspended from the practice of law for one year.

During oral argument before the Hearing Panel, respondent's counsel, a partner in respondent's firm, stated that respondent had been monitored, and reiterated respondent's testimony that the Parry Murray case was "aberrational" and had fallen "through the cracks." In response to questioning by the Panel, counsel admitted that respondent had not presented any evidence supporting a claim that respondent's epilepsy had affected his conduct in any way and that he was not making that argument; that the record indicated that respondent had not consulted with a therapist or performed pro bono work until after the charges had been brought; and that respondent had been "released from care" by that therapist.

At oral argument, the Committee argued for a stronger sanction than that suggested by the Referee but did not specify the length of the suspension sought. The Committee challenged the Referee's finding of remorse, citing the lack of evidence that respondent had, in fact, paid Parry Murray before the complaint had been filed, and his assertion in his answer that the misleading e-mails were "unintentional miscommunications."

In post-oral-argument submissions to the Panel, the Committee recommended a four-year suspension, the same sanction it now seeks before this Court. Respondent repeated his request for a public censure, which the Hearing Panel found was "so inadequate as to make us question Respondent's comprehension of the seriousness of his misconduct." He is currently seeking from this Court a six-month suspension.

In a report dated January 9, 2009, the Hearing Panel confirmed the findings of fact and conclusions of law of the Referee, but recommended increasing the sanction from a one-year suspension to an 18-month suspension. The Panel began its analysis by noting

> "the striking similarity between the course of conduct now before us and the course of conduct for which Respondent was previously suspended, as described in this Court's opinion sanctioning Respondent for that misconduct:

> " 'In confirming the Hearing Panel's findings of fact and conclusions of law, we note that respondent's admitted neglect of the foreclosure action was aggravated by his deliberate oral and written misrepresentations in a protracted effort to cover up his delinquencies, including false assurances to his client as to the status of their case when, in fact, the matter was never commenced. Indeed, respondent went so far as to instruct his clients to appear in court on two separate occasions for a nonexistent hearing, and to fabricate a letter, which he claimed was sent to a Judge, and three proposed orders. It was not until his deposition before the DDC that respondent finally admitted his misbehavior. Such false statements evidence serious professional misconduct in violation of DR 1-102 (a) (4) and DR 6-101 (a) (3). The fact that respondent alleges that he did not intend to cause his clients harm and that he did not profit financially are not defenses' (282 AD2d at [13-]14)."

Thus, the Panel concluded, the "chief aggravating factor" in this matter is respondent's previous, similar misconduct. The Hearing Panel also determined that another important factor in aggravation was respondent's "lack of candor." While respondent characterized his conduct toward Parry Murray in his answer to the complaint as "unintentional misrepresentation," the Panel found that the record showed "unequivocally that Respondent made repeated, intentional misstatements to his client." Unlike the Referee, however, who did not make an explicit finding as to credibility, the Hearing Panel concluded that respondent's testimony at the hearing—that he informed his client in either September or October 2006 that a complaint had not been filed—was not credible.

In addressing mitigation, the Panel acknowledged that respondent was not motivated by personal gain, but gave "limited credit" to his claims based on lack of harm to his client and to his pro bono activity, which he commenced only after he was notified of the charges filed against him.

With the permission of the Committee Chair, the Committee now moves for disaffirmance of the sanction recommendations of both the Referee (one-year suspension) and the Hearing Panel (18-month suspension), and, instead seeks a suspension of no less than four years. The Committee contends that the additional six months recommended by the Panel is still insufficient in view of the absence of compelling factors in mitigation, respondent's prior suspension for virtually identical misconduct, and the Panel's findings that respondent gave misleading information to the Committee during its investigation and testified falsely at the hearing.

In support of a six-month suspension, respondent contests the finding by both the Referee and Hearing Panel that his handling of his client's case constituted neglect in violation of DR 6-101 (a) (3) under charge one, because he did not violate a statute of limitations or any deadline, and his client's case was not prejudiced by his failure to file any action for nine months. Specifically, he argues that in his almost 20 years of practice, he has had only "two discrete" instances of neglect, both of which occurred approximately eight years apart. With regard to this matter, he claims he realized, although not promptly, that he should fix the situation, and not make the same mistake twice.

Respondent contends further that the Hearing Panel relied upon hearsay and inconclusive circumstantial evidence in concluding that he testified falsely when he said that he disclosed his neglect to Campbell before the filing of the disciplinary complaint. Respondent points out that Campbell was never called to testify, so that respondent's testimony was uncontroverted by anyone with personal knowledge of their conversations. Moreover, he avers that the testimony of Parry Murray's new lawyer, Weissman, was based solely on hearsay, and the October 2006 e-mails predate Columbus Day, when respondent believes he had the phone conversation with Campbell. Hence, respondent contends, there can be no finding that he testified falsely before the Referee and, thus, his admission to Campbell that he neglected the legal matter should be considered in mitigation.

Respondent asserts further that the Hearing Panel, without explanation, dismissed evidence of his cooperation and his

expressions of remorse. He notes that the Referee, who heard him testify, did not make any observation that he was not remorseful. In support of his claim that there was a lack of harm to the client he notes that the legal fee was repaid, an action was commenced by new counsel, the matter was then quickly settled, and the client withdrew the disciplinary complaint against respondent. Thus, respondent concludes that contrary to the contentions of the Committee and the findings of the Hearing Panel, the purported aggravating circumstances are not supported by the evidence.

Respondent contends that his behavior was not so egregious as to warrant anything more than a six-month suspension (see *Matter of Hershberg*, 235 AD2d 1 [1997] [six-month suspension for neglecting two legal matters and misrepresentation of status of case to two clients]). Furthermore, he suggests making his reinstatement conditional upon him providing both the name of a mentor to monitor or supervise his practice, and a report of a professional establishing that he is able to handle the stress of a busy law practice.

We conclude that, contrary to respondent's contention, his complete failure over the course of nine months to commence an action on behalf of his client is a clear example of neglect in violation of DR 6-101 (a) (3), and it is irrelevant whether or not the statute of limitations had expired. Indeed, in the previous disciplinary proceeding brought against respondent, he admitted that his failure to commence his client's foreclosure action constituted neglect in violation of DR 6-101 (a) (3), and the action was not time-barred (282 AD2d 12 [2001]). Accordingly, in light of respondent's admissions and the evidence presented, the findings of fact and conclusions of law sustaining the three charges of professional misconduct in violation of DR 1-102 (a) (4) and (7) and DR 6-101 (a) (3) are confirmed.

Whether respondent testified falsely before the Referee is something that, on this record, without testimony from Eoin Campbell, cannot be conclusively determined. While the e-mails from early October 2006 and Weissman's testimony suggest that the purported telephone conversation never occurred, based upon a fair preponderance of the evidence presented, it cannot be concluded that respondent testified falsely during the hearing. Accordingly, the Panel's finding, in aggravation, that respondent testified falsely before the Referee cannot, on this record, be confirmed.

The only issue remaining is the appropriate length of respondent's suspension. When assessing prior precedent involv-

ing the appropriate discipline to impose, certain relevant factors are considered including: the number of legal matters neglected, how long the neglect lasted, misrepresentations to the client, and the amount and type of previous discipline imposed. Here, respondent neglected one legal matter and misrepresented the status of the case to his client, which conduct was aggravated by a prior six-month suspension for virtually the same misconduct.

"[I]n cases where the neglect [of legal matters] has been combined with misrepresentation of the status of the case to the client or lack of candor before the Committee, the term of suspension has generally been longer than one year" (*Matter of Siegel*, 193 AD2d 181, 185 [1993] [attorney suspended for three years for, inter alia, neglecting four legal matters for substantial period of time, for misrepresenting status of case and three prior admonitions]; *see Matter of LeBow*, 285 AD2d 28 [2001] [18-month suspension for neglecting one legal matter, failing to inform client of status of case but did not misrepresent status, failing to cooperate with DDC investigation, false testimony before Referee, lack of remorse, and one prior admonition]; *Matter of Gill*, 225 AD2d 170 [1996] [three-year suspension for neglecting two legal matters, manufacturing fictitious answering papers, and making oral and written misrepresentations to client]).

In a recent case (*Matter of Alperin*, 66 AD3d 309 [2009]), this Court suspended an attorney for two years for engaging in a "pervasive pattern of misconduct by deceiving his firm and four of its clients concerning work that he completely failed to perform in regard to five separate cases" (at 310). The attorney admitted also engaging in a "pattern of deception to conceal his neglect of matters assigned to him" (*id.*)

Although the misconduct at issue in this proceeding involves one legal matter extending over a period of nine months, the circumstances are disturbingly similar to his previous misconduct, and suggest that he had not learned from his prior discipline. We also note that in the 2001 disciplinary proceeding, respondent testified that he and his firm had taken steps to reduce and manage more effectively his caseload, and had increased supervision by senior partners. Yet, approximately five years after his six-month suspension expired, and despite being monitored by his firm (according to a named partner), respondent committed the misconduct at issue.

Respondent has also offered remorse, but he has expressed it in such a fashion as to indicate that he does not appreciate the

seriousness of his misconduct. He essentially counterbalances his contrition by repeatedly emphasizing the fact that the client withdrew the complaint against him and that no harm came to the client.*

The Committee's request for a suspension of no less than four years appears too harsh, particularly since we cannot conclude that respondent presented false testimony before the Referee. On the other hand, respondent's suggestion of a six-month suspension overlooks that he has already been suspended for six months for almost the same exact misconduct. We thus conclude that a more severe sanction is necessary, and that the Hearing Panel's recommendation of an 18-month suspension is appropriate.

Accordingly, the Hearing Panel's finding that respondent testified falsely at the hearing is found not to be supported, but the Committee's motion to disaffirm is granted to the extent of rejecting the Referee's sanction recommendation and, otherwise, the findings of fact and conclusions of law of the Hearing Panel are confirmed, and respondent is suspended from the practice of law for 18 months.

SAXE, J.P., FRIEDMAN, NARDELLI, RICHTER and ABDUS-SALAAM, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of 18 months, effective September 17, 2010 and until further order of this Court.

---

* While no legal prejudice came to the client, in evidence was an e-mail from Campbell to respondent "urgently" asking for a copy of the default judgment because the situation was causing him a lot of problems and it was going to "cost someone their job on Friday unless we get that judgement."