OPINION OF THE COURT
Sabrina B. Kraus, J.
Background
The underlying summary holdover proceeding was commenced by 46 Downing Street LLC against Otto Thompson, the rent control tenant of record, based on the allegation that respondent had sublet 46 Downing Street — apartment 1C, New York, New York 10014 — without permission, and in violation of section 226-b of the Real Property Law. At the time the proceeding was commenced, respondent was incarcerated. Kay K. Bourabah was not originally named or served in this proceeding, but she was substituted in by the inquest court[1] for “Jane Doe” on the date of the inquest.
Procedural History
Petitioner issued a notice to cure dated March 19, 2009, requiring that respondent cure the alleged default by April 15, 2009. The notice to cure was served on Jose Salmon, who asserted he was a cotenant, at the subject premises on March 24, 2009, and a copy was delivered to Division of Housing and Community Renewal (DHCR) on March 25, 2009. The notice to cure *1021 states that respondent violated section 226-b of the Real Property Law and that respondent was “permitting various people to use and occupy the subject premises either pursuant to a license, a sublease or partial sublease, a partial assignment or an assignment.” The notice to cure further provides:
“You reside in separate premises other than the subject premises. As a rent controlled tenant, statutorily you have no right to permit your apartment to be used by others (except roommates).
“You are not residing in your apartment. You are not permitted to have a [roommate] when you are not residing in your apartment.
“PLEASE TAKE FURTHER NOTICE, the violation of a substantial obligation of your tenancy as noted herein must be cured by the removal of the individual or individuals who are currently occupying the subject apartment.”
Petitioner issued a notice of termination on June 3, 2009, terminating respondent’s tenancy effective June 25, 2009. The notice of termination was alleged to have been served by personal delivery to respondent at the subject premises on June 9, 2009, and on DHCR by personal delivery on the same date. Copies of both notices were mailed to Anna M. Kross Center (AMKC), 18-18 Hazen Street, East Elmhurst, NY 11370.
The petition is dated July 27, 2009, and issued on August 18, 2009. The affidavit of service alleges the notice of petition and petition were served by personal service on respondent at the subject premises on August 25, 2009, with a copy mailed to AMKC on August 26, 2009. The affidavits of service were filed with the court on August 27, 2009. The petition asserts that the subject premises is governed by rent stabilization, rather than rent control as alleged in the predicate notices.
The proceeding was initially returnable on September 3, 2009.
On August 31, 2009, respondent submitted an affidavit of unavailability, through Bourabah, asserting that respondent was incarcerated in Riker’s Island pending trial, and seeking to have the proceeding adjourned to September 25, 2009, to obtain counsel to represent respondent.
On September 3, 2009, Salmon appeared and asserted he was in occupancy of the subject premises. The proceeding was adjourned to September 29, 2009 to afford Salmon an opportunity to seek counsel.
On September 29, 2009, it was asserted that respondent was incarcerated in Riker’s and the proceeding was adjourned to *1022 October 30, 2009, for trial, and for petitioner “to submit an Order to Produce.”
On October 8, 2009, the court signed an order to produce seeking the production of respondent from AMKC to the courthouse on October 30, 2009 for trial.
On October 30, 2009, the proceeding was adjourned to November 30, 2009 at 9:30 a.m. On November 30, 2009, the proceeding was adjourned to January 6, 2010, for inquest. The marking on the file indicates that the court sent a postcard to both parties, and that an order to produce was sent to the prison. On January 6, 2010, the proceeding was adjourned to January 29, 2010.
On January 7, 2010, the inquest court signed an order to produce respondent from Cape Vincent Correctional Facility to Civil Court on January 29, 2010.
On January 29, 2010, the inquest took place. On February 8, 2010, the inquest court issued a decision awarding petitioner a final judgment of possession, as against respondent and Bourabah, whom the court substituted in as a party in place of Jane Doe.
The decision provided:
“This is a holdover proceeding wherein the petitioner seeks to regain possession of the subject rent controlled apartment on the grounds that the respondent sublet or assigned the premises without the petitioner’s knowledge or consent and that the respondent is now residing elsewhere.
“The petitioner has shown proof that a copy of the Notice of Petition and Petition was sent to the respondent at the correctional facility the petitioner believed the respondent to be located [sic]. In addition, This Court has served several notices to produce upon said center & upon The Cape Vincent Correctional Facility, a location provided to the petitioner and to the court by Kay Bourabah, who claims to be respondent’s common law wife.
“The respondent Otto Thompson failed to appear or answer despite 6 adjournments. Moreover, upon information & belief, The Court was advised that respondent’s booking number does not appear in the NYS Corrections Department Database. Under these circumstances, The Court adjourned this matter one final time to January 29, 2010 for inquest.
*1023 “Once again, the respondent Otto Thompson did not appear. Christopher Hubert, a private investigator retained by the petitioner, testified. He stated that when he went to the subject premises he was initially unable to gain admittance. On November 24, 2009, he made a final visit and was admitted by an individual named Jose Salmon. Mr. Salmon stated that he had been respondent Thompson’s roommate for 2 years. This witness further testified that he conducted an investigation and ascertained that respondent Thompson was incarcerated in an upstate facility serving a five year sentence which commenced in January 2009.
“In addition, Mr. Hubert stated that he followed up with respect to an individual named Kay Bourabah. The petitioner had advised him that she had called the petitioner’s office concerning Otto Thompson. He ascertained that Ms. Bourabah had placed the calls from a telephone number registered to her father’s business in New Jersey. He also stated that he learned Ms. Bourabah and Otto Thompson had had a child together.
“He had also obtained documents relating to a proceeding brought by Ms. Bourabah against the NYS Division of Housing & Community wherein she sought to succeed to her mother’s apartment in the Southbridge Towers Development. She had alleged that she lived in said apartment with her mother. Ms. Bourabah was evicted or vacated said apartment in January 2009.
“Kay Bourabah testified at the inquest as well. She stated she was Otto Thompson’s common law wife and confirmed that they had a child together. She provided a copy of a birth certificate for this child indicating that she had given the subject apartment as her address & Otto Thompson’s address at that time; The child’s passport listing the subject apartment was also produced. The only other documentation presented was a bank statement, dated February 2009, listing herself as The person with the ‘Power of Attorney’ for Otto Thompson’s account. “She conceded that her daughter attends school in New jersey and admitted that she moved into the subject apartment after she had to leave the apartment in Southbridge Towers in January 2009. This *1024 would have occurred after Otto Thompson’s incarceration.
“For all these reasons, This Court rules as follows: The petition and notice of petition is amended to substitute Kay Bourabah for ‘Jane Doe.’ The petitioner is awarded a final judgment of possession as against Otto Thompson and Kay Bourabach. Issuance of the warrant is stayed 5 days. This proceeding is severed as to ‘John Doe’ without prejudice.” (Civ Ct, NY County, Feb. 8, 2010, index No. L&T 81450/2009 [reprinted verbatim from original in court file].)
The inquest court signed a judgment of possession on February 8, 2010, and the warrant of eviction issued on March 18, 2010. Petitioner asserts that the warrant was executed on April 30, 2010.
On April 10, 2013, respondent moved by order to show cause stating that he had not appeared because he was incarcerated at the time of the inquest, and asserting that the prison did not recognize the order to produce, that petitioner had failed to establish its claim of illegal subletting, that he had just been released from prison and was now homeless and that petitioner had intentionally obtained a judgment against him, on default, to regain possession of his rent-controlled apartment.
On April 19, 2013, MFY Legal Services appeared for respondent, and petitioner’s counsel appeared. The parties entered into a stipulation adjourning the motions to May 23, 2013, allowing for the service of an amended motion by counsel on behalf of respondent, and providing for service of the balance of the papers.
Respondent filed an amended motion returnable May 23, 2013. Additionally, Tomoko Watabe, the new tenant in possession served a cross motion for attorneys’ fees dated May 16, 2013, which does not appear to have been filed through the clerk’s office or entered into the court computer.
On May 23, 2013, the parties filed a stipulation further adjourning the motions to June 28, 2013.
On June 28, 2013, the parties appeared with counsel ready to argue the motions. Petitioner’s counsel made an application to have the motions referred to the inquest court. Respondent’s counsel opposed said application and asked that this court retain jurisdiction. This court agreed that, given the issues raised, it was more appropriate for the inquest court to determine the *1025 pending applications, and granted petitioner’s application. The court issued a transfer order, to the appropriate part in New York County Housing Court, where the inquest court was currently sitting, referring the pending motions to inquest court for determination. The inquest court refused to accept said referral, and instead referred the motions to Judge Kaplan, the Supervising Judge of New York County Housing Court.
On July 1, 2013, Judge Kaplan directed this court to retain jurisdiction of the motions. Shortly thereafter, this court restored the proceeding on July 10, 2013, for further argument and clarification of the issues raised, and on said date, the motions and proceeding were adjourned to September 9, 2013, for submission of additional papers. On September 9, 2013, the motions were submitted and the court reserved decision.
Alleged Facts
Respondent is 57 years old and asserts that he has lived in the subject premises for approximately 50 years. Respondent is disabled, suffering from partial paralysis in his legs, and received supplemental security income (SSI) through which he paid the monthly rent for the subject premises of $450.25. Respondent moved into the subject premises as a child with his mother in 1963, and it is the only home he has known since that date. In 2004, respondent’s mother died, and an eviction proceeding was commenced against respondent. However, respondent asserted a defense of succession, which petitioner acknowledged and said proceeding was discontinued.
Salmon became respondent’s roommate in 2006 or 2007. They shared the subject premises through October 2008, when respondent was arrested and incarcerated at Riker’s Island, pending criminal charges. Respondent asserts that, after his arrest, his rent continued to be paid by direct deposit for several months, and respondent states that subsequently his SSI was discontinued and his bank account was closed.
Respondent asserts that Salmon vacated in December 2009 or January 2010 due to harassment by petitioner. Petitioner asserts that no one else lived in the subject premises after said date. In October 2009, respondent was convicted of the pending charges and sentenced to five years in jail. At or about that time, respondent was transferred from Riker’s Island to another facility in upstate New York.
*1026 The Motions
Respondent moves to vacate the default judgment entered against him after inquest pursuant to CPLR 5015 (a) (1). Said statute provides that
“[t]he court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of . . . excusable default, if such motion is made within one year after service of a copy of the judgment or order with written notice of its entry upon the moving party.”
Petitioner never served a copy of notice of entry on respondent, nor was a notice of entry filed with the court, therefore the motion to vacate the default is timely. If the court denied respondent’s motion to vacate the default, respondent would be without a remedy to challenge the decision issued by inquest court, as no appeal lies from a default judgment (Lauer v City of Buffalo, 53 AD3d 213 [2008]; Bank Leumi Trust Co. of N.Y. v Sibthorpe, 161 AD2d 325 [1990]).
An application for relief from a default judgment is to be liberally construed (Myzal v Mecca, 28 AD2d 1022 [1967]). Moreover, there is a preference for cases to be determined on the merits rather than on default (DFI Communications v Golden Penn Theatre Ticket Serv., 87 AD2d 778 [1982]).
Excusable Default
The right to be heard as contained in the Due Process Clause is a cornerstone of our system of justice (US Const Amend XIV; Mullane v Central Hanover Bank & Trust Co., 339 US 306 [1950]). It is undisputed that due process is violated unless the “opportunity to be heard [is afforded] at a meaningful time and in a meaningful manner” (Fuentes v Shevin, 407 US 67, 80 [1972] [internal quotation marks omitted]).
Respondent was denied due process and respondent has presented an excusable default for his failure to appear. Respondent was incarcerated at the time of the inquest, but made many and varied attempts to respond to the proceeding, which establish that his failure to appear was not willful and that his incarceration constituted a reasonable excuse to vacate the default (Matter of Kiesha G.-S. v Alphonso S., 57 AD3d 289 [2008]).
Incarceration can be the basis for excusable default. For example, in Benadon v Antonio (10 AD2d 40 [I960]), the Court *1027 held defendant had established excusable default due to incarceration at the time the proceeding was commenced and for almost two years thereafter. The Court held “in order to merit relief from the default, there need be no finding that defendant was completely incommunicado or even that he did not acquire any knowledge of the institution of the action” (id. at 42). The Court also noted that it was reasonable for some additional delay to have passed, after defendant was released from prison, and that plaintiff was aware of defendant’s incarceration when the proceeding was commenced. The court concluded that these “circumstances strongly suggest . . . that defendant be given an opportunity to defend on the merits” (id.; see also Portela v Weiner, 19 Misc 3d 129[A], 2008 NY Slip Op 50531[U] [2008] [holding incarceration on the date of the hearing constituted reasonable excuse for failure to appear]).
While there are some instances where incarceration was not deemed to be excusable default, those holdings are limited to situations where the respondent failed to notify the court of the incarceration and or where respondent was represented by counsel (see e.g. Matter of Fa’Shon S., 40 AD3d 863 [2007] [father’s incarceration at time of hearing was not a reasonable excuse for his default where he provided no explanation as to why he failed to notify his attorney or the court of his imprisonment]).
In Town of Oyster Bay Hous. Auth. v Kohler (34 Misc 3d 1243[A], 2012 NY Slip Op 50518[U] [Nassau Dist Ct 2012]), a holdover proceeding was commenced against a tenant who was incarcerated, the landlord was aware that the tenant was incarcerated, and the tenant notified the court of said incarceration. Despite said notice, an inquest was held in the absence of the tenant, and the landlord was awarded a judgment of possession and issuance of the warrant. Subsequent to the inquest, the tenant made written submissions to the court which the court treated as a motion to vacate the default judgment, which it granted. Here, as in Kohler, respondent sent letters to the court after the inquest.
Respondent and his family also attempted to retain counsel. Respondent asserts that Paul Block was retained by his family and paid money. Respondent’s brother met with Mr. Block at his law office in 2009 or 2010. Respondent’s brother asserts that Mr. Block had advised him that the case had been adjourned a number of times, failed to keep him informed of the status of the case, failed to inform him of the date of the inquest *1028 and then later asserted that he was pursuing an appeal on behalf of respondents. Eventually, it is asserted that Paul Block met respondent’s brother on a street corner and returned all paper work having never taken action on his behalf.[2]
Respondent also asserts that he repeatedly made inquiries at the institution where he was incarcerated about being produced for the inquest. Respondent attaches documentary evidence supporting his claim that he made inquiries. Respondent also sent Bourabah to court to speak on his behalf.
The court finds respondent has established excusable default (see e.g. Weisbaum v Kastenbaum, 284 App Div 882 [1954] [held reversible error to deny a motion to vacate a default made three years after the default was issued, where the moving party was confined to a state institution for said period]; Pricker v City of New York, 251 AD2d 242 [1998] [held proper for trial court to vacate a default judgment made over one year after entry of the default, since one year had not lapsed since service of notice of entry and default was not willful, respondent always intended to defend the proceeding and had a meritorious defense]).
Additionally, respondent’s application should be liberally viewed to the extent that his incarceration rendered him unable to adequately defend his rights in this proceeding. “Where an individual is incarcerated, the Court cannot find that said person has willfully absented himself from Court and proceed at inquest. In fact, the Court is under an obligation to use all necessary means to facilitate that individual’s participation in the proceeding” (Matter of Kimberly A., 23 Misc 3d 1136[A], 2009 NY Slip Op 51159[U], *1-2 [Earn Ct, Queens County 2009] [citations omitted]).
The orders to produce issued did not result in respondent being produced, and did not comply with statutory requirements. Pursuant to CPLR 2302 (b) housing court judges lack jurisdiction to issue an order. Such an order must be signed by a supreme court justice, who has authority pursuant to CPLR 7002 (b) as referenced in CPLR 2302 (b). “Thus, if a practitioner must subpoena a prisoner to the New York City Housing Court *1029 . . . , a judicial subpoena must be obtained in Supreme Court. The motion for such a subpoena must be made to the person ‘having custody of . . . the person confined.’ ” (Scherer, Residential Landlord-Tenant Law in New York, ch 14, § 14:32 [2011-2012 ed], citing CPLR 2302 [b].)[3]
The decision of the inquest court noted that “the Court was advised [t]hat respondent’s booking number does not appear in [t]he NYS Corrections Department Database.” There are two numbers used to identify New York State prisoners, a department identification number (DIN) and a New York State identification number (NYSID). Either number can be used to obtain all information about New York State inmates including where the inmate is, for what duration, the periods of incarceration and parole, date of birth, and applicable charges. This information is available on the New York State Department of Corrections and Community Supervision website at http:// nysdoccslookup.doccs.ny.gov. This court takes judicial notice that, when the NYSID number listed on all orders to produce for respondent is input, the information for respondent appears, and the DIN number of 09R3428 is the correct DIN number for respondent. It is not clear from the decision who advised the court that the DIN number was incorrect, but there was sufficient information just with the NYSID number for the court, petitioner or any other interested party to obtain the necessary information on the web.
Additionally, the order to produce issued directed that respondent be placed on a bus and physically produced in court. The preprinted form used was an outdated form. Because of the cost involved in physically producing incarcerated litigants, such an order to produce is no longer typically used in Housing Court cases. The form now typically issued by the court would be an order to produce for a videoconference. Videoconferences have routinely been employed by Housing Court, and other trial courts, to allow incarcerated litigants to appear since at least 2008. Once such an order to produce is properly issued, it is then provided by the judge to administration, who coordinates the appearance of the inmate with the facility via videoconference. Administration will generally send the housing court judge confirmation that such videoconference has been scheduled and *1030 confirmed (see e.g. LCD Holding Corp. v Velez, 40 Misc 3d 1242[A], 2013 NY Slip Op 51530[U] [Civ Ct, NY County 2013] [wherein incarcerated respondent appeared in proceeding through videoconference]). Respondent was not afforded an opportunity to appear by videoconference in this proceeding.
“In the current age of technology, new courthouses, such as the one in which this Court is privileged to sit, have available technological means to permit an individual to participate in the court process remotely through video technology. There are currently agreements between the New York State Department of Correctional Services (‘DOCS’) and the New York State Office of Court Administration (‘OCA’) and also between the New York City Department of Correction (‘DOC’) and OCA that encourage participation by state and city inmates ... by video technology” (Matter of Kimberly A., 23 Misc 3d 1136[A], 2009 NY Slip Op 51159[U], *2 [Fam Ct, Queens County 2009]).
Additionally, it is common for housing court judges to consider the appointment of a guardian ad litem (GAL), if necessary, when a litigant is incarcerated. This is employed because often appearing by videoconference is insufficient for the litigant to take the steps necessary to defend his rights in the proceeding. Petitioner argues that such a determination is left to the sound discretion of the court, and that the inquest court exercised its judgment to determine such relief was not warranted. However, there is nothing in the record that indicates that the inquest court even considered the possibility of appointing a GAL for respondent.[4]
There is precedent in New York law for finding that an incarcerated litigant is considered as a person for whom a guardian ad litem should be appointed. For example, SCPA 103 (40) defines a person under disability to include a person who is confined as a prisoner who fails to appear, under circumstances that the court finds are due to confinement in a penal institution. The statute requires that a GAL be appointed for such a person.
*1031 Failure to appoint a GAL will otherwise deprive the litigant of basic due process rights and an opportunity to be heard. As one court has noted:
“The basic issue is whether or not the [respondent], in the particular circumstances of the case, will be able to establish his defense without being personally present upon the trial. If he cannot, the denial of personal presence would be a denial of due process. Due process has to do with the denial of fundamental fairness, shocking to the universal sense of justice.” (Bagley v Bagley, 57 Misc 2d 388, 390, citing Kinsella v United States ex rel. Singleton, 361 US 234 [I960].)
As held by the Appellate Division, First Department in Matter of Brown (19 AD2d 24, 25-26 [1963]):
“We are of the opinion that, where the court was apprised of the fact that an interested party was in default and was currently incarcerated, the court was under a duty to take some steps to determine whether the default was intentional or due to the fact that the [respondent], by [virtue] of his situation, was effectually prevented from appearing. The better procedure would have been to appoint a special guardian to inquire into the circumstances of the defaulting party’s detention and to obtain any information that was available as to whether or not the default was deliberate. Upon the report of a special guardian the court could then take such steps as the situation called for. This might include providing representation by way of a guardian ad litem.” (Emphasis added.)
In Matter of Jung (State Commn. on Jud. Conduct) (11 NY3d 365 [2008]) the Court of Appeals held that trial courts should insure that incarcerated litigants have a meaningful opportunity to be heard. The Court of Appeals noted that “[t]he right to be heard is fundamental to our system of justice . . . and ... attaches . . . regardless of a party’s status as incarcerated” (id. at 373). The Court of Appeals further held that a policy of leaving an incarcerated litigant to produce himself “resulted in gross . . . deprivation of the fundamental right to be heard, and had grave consequences for litigants” (id. at 375).
This court holds that a person who fails to appear in a summary proceeding due to incarceration, and whom the court is unable to have produced via videoconference or otherwise, is *1032 a person unable to adequately defend his or her rights as defined by CPLR 1201 and in such circumstance, to insure due process, the court should appoint a GAL.
Finally, petitioner argues that the court should conduct a hearing on the issue of excusable default, implying that it is possible that the order to produce was received by the prison and that respondent may have simply refused to be produced. There is no basis in the record for the court to make any such inference, nor to require a hearing on said issue.
Based on the foregoing, the court finds respondent has established excusable default.
Meritorious Defense
In addition to a showing of excusable default, respondent must also assert a meritorious defense to petitioner’s cause of action (Goldman v Cotter, 10 AD3d 289 [2004]; DeStaso v Bottiglieri, 52 AD3d 453 [2008]). Normally, such a defense would be asserted in a proposed answer annexed to the motion to vacate the default (Armstrong Trading, Ltd. v MBM Enters., 29 AD3d 835 [2006]), but a proposed answer is not necessary where affidavits are submitted that sufficiently set forth the existence of a meritorious defense to the claim (Frank v Martuge, 285 AD2d 938 [2001]).
Respondent asserts several meritorious defenses to the underlying cause of action. Respondent asserts that the arrangement with Solomon was not a subletting arrangement, but a roommate arrangement. At the time of the inquest, Solomon had vacated and the only alleged occupant was the mother of respondent’s child and respondent’s minor child, whom it is asserted entered into possession without respondent’s permission or knowledge and can not be considered a subtenant because of the familial relationship between the parties.
Moreover it is well settled that the rights of tenants are not extinguished by their incarceration. The New York State Constitution provides that no “person shall be deemed to have gained or lost a residence, by reason of his presence or absence . . . while confined in any public prison” (NY Const, art II, § 4; see also Matter of Corr v Westchester County Dept. of Social Servs., 33 NY2d 111 [1973]).
In the context of rent regulated tenancies, these protections have been deemed to provide that absence from a rent regulated apartment due to incarceration is excusable and does not preclude the assertion of rights under rent regulation {Kelly *1033 Mgt LLC v Soltero, 27 Misc 3d 984 [2010] [absence from rent regulated apartment for four years did not preclude succession defense]).
In 216-220 E. 67th St. Assoc. v Quinn (136 Misc 2d 188 [1987]), Judge Gangel-Jacob granted a tenant summary judgment dismissing an illegal subletting case where the tenant was incarcerated. The court held that the tenant, who had been sentenced to four years in jail, continued to maintain the subject premises as his primary residence while incarcerated, and that subletting in accordance with statutory requirements is permissible for the purpose of allowing the tenant to retain his home during the absence that was required by his incarceration. The court held that, even if the tenant was not released from prison by the end of the proposed sublease, the tenant reasonably expected to return as soon as possible. Finally the court noted that “[t]o allow landlord to reject the sublease and evict [tenant] would be unreasonable from the standpoint of public policy as well as law. [Tenant’s] readjustment to society upon his release from prison would be hindered if he had no home to which he could return.” (Id. at 192.)
Moreover, the pleadings on their face appear to contain numerous defects. This is acknowledged by petitioner, who now moves to amend the petition in the event the default is vacated. Petitioner argues that the defects in the predicate notices should be overlooked by the court and are not sufficient to warrant dismissal. This will be an issue for the trial court. Petitioner acknowledges that the petition contained the incorrect regulatory status of the subject premises.
Similarly, the predicate notices, which are not subject to amendment, provide that respondent is being evicted for his violation of Real Property Law § 226-b, which petitioner acknowledges is inapplicable to rent-controlled tenants. The predicate notices otherwise fail to cite any specific provision of the rent control laws pursuant to which the proceeding was maintained.
Petitioner now asserts in its motion papers that Administrative Code of the City of New York § 26-408 (a) allows for respondent’s eviction under these circumstances and further argues that the failure to cite said provision in the predicate notices and pleading is immaterial.
Additionally, petitioner served a notice to cure which would presume a right to cure any breach established at trial, post-trial. In the case at bar it is acknowledged that Salmon had *1034 vacated by the time of the inquest, and that Bourabah never really lived there, so any breach appears to have been cured prior to the entry of the judgment of possession.
Based on the foregoing the court finds that respondent has sufficiently articulated meritorious defenses to support vacating the default judgment, and which ought to be determined by the court at trial.
Laches
Petitioner argues that even if the court finds that respondent has sufficiently asserted excusable default and meritorious defense, the court should decline to vacate the default based on loches. The court does not find that loches should bar respondent from having his day in court. Respondent’s default was not willful and the delay in seeking to vacate the default was beyond his control. Moreover, the prejudice to petitioner, who asserts having spent $200,000 in renovations to the subject premises, is outweighed by the potential prejudice to the rent-controlled tenant of losing the home he has occupied for most of his life where the underlying cause of action appears questionable, without ever having had a day in court. Mere delay, however long, is in and of itself insufficient to establish loches (Weiss v Mayflower Doughnut Corp., 1 NY2d 310 [1956] [mere delay however long insufficient to establish loches without other elements of equitable estoppel]).
Based on the foregoing the court does not find respondent’s application is precluded by loches.
Conclusion
Respondent’s motion to vacate the default is granted. Respondent’s request to be restored to possession shall be held in abeyance pending the outcome of the trial. The judgment entered against respondent shall also be held in abeyance, in accordance with CPLR 5015. The court chooses to open the default, allow respondent to defend on the merits, but keep the judgment in place as security while the trial proceeds (Treitel v Arnold Chait, Ltd., 20 AD2d 711 [1964]).
If respondent prevails at trial then the default judgment shall be vacated. Respondent’s tenancy is reinstated and respondent restored to possession effective March 1, 2014, as respondent has agreed in such event to defer his right to restoration through said date, so as to permit Watabe to remain in possession through the expiration of his current lease term.
*1035 As an incident of the power to vacate its own judgments and orders, this court also has the power to restore a tenant to possession (Ric-Mar Equity Ventures v Murrell, 184 Misc 2d 298 [2000]). While often times a hearing will be required to balance the equities on the issue of restoration where a new tenant is in possession, in the case at bar it is clear that Watabe’s interest in the subject premises as an unregulated tenant who’s lease expires in February 2014, and who has only been a tenant since March 2012, is not as compelling as the rent control tenancy asserted by respondent, who has lived in the subject premises since he was a child (see e.g. Pomeroy Co. v Thompson, 5 Misc 3d 51 [2004] [holding restoration was appropriate given age and disability of tenant, 50-year rent-controlled tenancy lapses on part of court appointed GAL and transient nature of new tenant’s occupancy]). Additionally, in this case, the parties will be afforded a full trial prior to any determination on restoration.
Respondent’s motion to join Watabe as a party is granted as Watabe’s rights as the tenant in possession will be impacted by the trial and Watabe must be a party in order for the court to be able to award complete relief in the event that restoration is appropriate, and to afford Watabe an opportunity to be heard.
Petitioner’s motion to amend the petition is granted. Petitioner shall serve an amended petition on respondent and Watabe within five days of receipt of this order. Respondent and Watabe shall serve an answer or responsive pleading within 10 days thereafter.
Watabe’s motion for attorneys’ fees is denied without prejudice to renewal at the conclusion of the proceedings, if there is a basis at said time to consider said relief.

. Inquest court refers to the Judge who presided over the proceeding through the inquest in January of 2010.

. The court notes that Paul Block was suspended from practice in 2001 for neglecting client matters and lying to clients about work done on their behalf (Matter of Block, 282 AD2d 12 [2001]). Although Block was subsequently reinstated (Matter of Block, 288 AD2d 168 [2001]), he was again suspended for 18 months in August 2010 for neglecting a matter and misrepresenting the status to his client (Matter of Block, 77 AD3d 214 [2010]) and subsequently disbarred for criminal activity (Matter of Block, 105 AD3d 70 [2013]).

. In Housing Court, where the court seeks to have a litigant produced this is typically done by having the Supervising Judge of Civil Court sign the notice to produce, as such administrator is generally at least an acting Supreme Court Justice.

. The court has reviewed the recorded transcripts from the proceedings for the inquest court. Respondent’s counsel submitted same in the form of a disc annexed to the motion. However, the court reviewed the recordings directly from the court computer. For purposes of any appeal an official transcript from the proceedings on January 29, 2010 and November 30, 2009 would have to be part of the record as these are the dates reviewed by the court, and referenced by the parties in the motion papers.